UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RPM FREIGHT SYSTEMS, LLC,

    Plaintiff,

v.

SVB EXPRESS, INC.,

    Defendant.
_____/

Case No. 24-11215

Hon. F. Kay Behm

### OPINION AND ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 20)

Before the court is Plaintiff's motion for partial summary judgment, filed May 2, 2025. Defendant filed an untimely response on July 2, 2025, and a motion to file a supplemental brief on July 15, 2025. Plaintiff filed a motion to strike Defendant's response on July 16, 2025. The court held oral argument on July 23, 2025, and took the matter under advisement. Although Defendant has not articulated good cause for its late filings, the court will exercise its discretion in favor of considering them, given its preference for determining cases on the merits and the lack of prejudice to Plaintiff. For the reasons explained below, Plaintiff's motion is granted.

I.  **Factual Background**

Plaintiff RPM Freight Systems, LLC, brought this case against SVB Express, Inc., alleging claims of breach of contract, declaratory relief, and unjust enrichment. RPM is a freight broker who acts as an intermediary between shippers and motor carriers, and SVB is a motor carrier who transports cargo. In 2018, RPM and SVB entered into a Broker-Carrier Agreement, in which SVB agreed to move cargo for clients obtained by RPM. ECF No. 20-2. The Agreement contains the following indemnification clause:

> Carrier [SVB] aggress [sic] to indemnify, defend and hold Broker [RPM] and its Customers, and their respective officers, directors, managers, members, shareholders, employees, agents and assigns, harmless from and against any and all fines, penalties, costs, demands, damages, (including bodily injury and property damage) losses, obligations, claims, liabilities and expenses (including reasonable attorney's fees) of whatever type or nature arising out of or related to: (i) the maintenance, use or operation (including loading and unloading by Carrier, Carrier's agents or contractors) of any motor vehicle or equipment in performance of services under this Agreement. . . .

*Id.* at ¶ 17.

Pursuant to the Agreement, SVB picked up Tesla lithium batteries from Sparks, Nevada, for delivery to Calistoga, California. The SVB truck carrying the batteries was in an accident on December 8, 2021, resulting in

irreparable damage to the cargo. The truck stopped suddenly and then lost its load; according to the police report, the load was not properly secured. ECF No. 20-4.

Based upon a demand from Tesla, RPM paid $765,016.80 to reimburse it for the damaged batteries. RPM then sought payment from SVB under the Agreement, which was denied. SVB's insurance carrier similarly denied liability. SVB's position is that the batteries were loaded and secured under Tesla's directive, and thus the damage was the fault of the shipper. SVB also contends that the contract only required it to obtain $100,000 in insurance, and that RPM did not inform it that the Tesla cargo was worth over $700,000.

## II.    Analysis

To establish its breach of contract claim under Michigan law, RPM must show "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of Am., N.A. v. First Am. Title Ins. Co.*, 499 Mich. 74, 100, 878 N.W.2d 816 (2016). The parties do not dispute the validity of the contract or that Michigan law applies. RPM alleges that SVB breached the indemnification provision of the Agreement, which provides that SVB shall "indemnify, defend and hold Broker [RPM] and its Customers . . . harmless

3

from and against any and all . . . damages . . . of whatever type or nature arising out of or related to: (i) the maintenance, use or operation (including loading and unloading by Carrier, Carrier's agents or contractors) of any motor vehicle or equipment in performance of services under this Agreement. . . ." ECF No. 20-2.

SVB argues that the cargo damage was the fault of the shipper, and that it is not liable under the Carmack Amendment to the Interstate Commerce Act. The Carmack Amendment creates a national scheme of carrier liability for loss or damage to goods transported in interstate commerce. *Exel, Inc. v. S. Refrigerated Transp., Inc.*, 807 F.3d 140, 148 (6th Cir. 2015). Under the Amendment, a motor carrier is liable "for any loss, damage or injury" caused by the carrier to the cargo, unless it can show that the damage was caused by "(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods." *Plough, Inc. v. Mason and Dixon Lines*, 630 F.2d 468, 470 (6th Cir. 1980) (citing *Missouri Pacific R.R. v. Elmore & Stahl*, 377 U.S. 134, 137 (1964)). In other words, the Carmack Amendment imposes strict liability on motor carriers for "actual loss or injury to property," subject to only the listed exceptions. 49 U.S.C. § 14706(a). The Carmack Amendment generally applies to all motor carrier

transactions in interstate commerce "unless the shipper has agreed to some limitation in writing." *Exel*, 807 F.3d at 148; *see also* 49 U.S.C. § 14101(b)(1).

However, as this court has noted in a similar case, courts have held that "the Carmack Amendment applies only to transactions between 'motor carriers' and 'freight forwarders,' specifically exempting 'brokers' from its coverage." *RPM Freight Sys., LLC v. K1 Express, Inc.*, 691 F. Supp. 3d 804, 811 (E.D. Mich. 2023) (citing cases).[1] Although the Sixth Circuit has not directly addressed this issue, courts have generally found that the Carmack Amendment does not govern the relationship between a broker such as RPM and a motor carrier such as SVB. *See id.*; *see also Exel*, 807 F.3d at 149 (noting the Carmack Amendment was enacted to protect shippers, not brokers, and does not give brokers a direct cause of action); *Total Quality Logistics, LLC v. RODVI Logistics, LLC*, 2024 WL 4901906, at *3 (S.D. Ohio Nov. 27, 2024) ("The law is clear that the Carmack Amendment is inapplicable to claims asserted by or against freight

---

[1] "The term 'broker' means a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2).

5

brokers."). Therefore, the Carmack Amendment does not apply or provide a defense for SVB to RPM's breach of contract claim.

Even if the Carmack Amendment did apply to the transaction between RPM and SVB, the parties expressly waived the Amendment's liability scheme in their Agreement. The statute provides that "if the shipper and carrier, in writing, expressly waive any or all rights and remedies under this part for the transportation covered by the contract, the transportation provided under the contract shall not be subject to the waived rights and remedies and may not be subsequently challenged on the ground that it violates the waived rights and remedies." 49 U.S.C. § 14101(b)(1). The parties' Agreement includes such a waiver, stating: "Broker and Carrier hereby expressly waive all provisions of Chapters 137 and 147 and any other provisions of Subtitle IV, Part B of Title 49, United States Code, to the extent that such provisions are in conflict with express provisions of this Agreement." ECF No. 20-2 at ¶ 27. *See E. Express, Inc. v. Pete Rahn Constr. Co.*, 554 F. Supp. 3d 960, 965 (S.D. Ill. 2021) ("The Court agrees with the several district courts considering similar contract language that [it] was an express waiver of the Carmack Amendment.").

The contract further provides, in part:

> ¶ 16: Carrier assumes liability as a common carrier for loss, damage to or destruction of the goods entrusted to it

> . . . . Carrier shall pay to Broker, or Broker may offset from the amounts Broker owes Carrier, for *any losses* arising from goods so lost, delayed, damaged, or destroyed . . .
> ¶ 17: Carrier agrees to indemnify, defend and hold Broker and its Customers . . . harmless from and against *any and all fines, penalties, costs, demands, damages (including bodily injury and property damage), losses, obligations, claims, liabilities, and expenses (including reasonable attorney's fees)* of whatever type or nature arising out of or related to: (i) the maintenance, use or operation (including loading and unloading by Carrier, Carrier's agents or contractors) of any motor vehicle or equipment in performance of services under this Agreement. . . .

ECF No. 20-2 (emphasis added). The express language of paragraph 16, which states that SVB "shall pay" for "*any* losses," and paragraph 17, which states that SVB must indemnify RPM "from and against *any and all* fines, penalties, costs, demands, [or] damages," without exception, conflicts with the Carmack Amendment, which creates certain exceptions to liability. *See* 49 U.S.C. § 14706. In contrast to the broad indemnity provision in the Agreement, the Carmack Amendment exempts carriers for damage caused by the shipper. The Amendment is therefore "in conflict with the express provisions" of the Agreement and the conflicting provisions of the Amendment (creating exceptions to liability) were waived by the parties pursuant to paragraph 27 of the Agreement. In other words, the parties' Agreement provides for strict liability on the part of SVB and its alleged lack of fault with respect to the damaged cargo is not a defense.

Where, as here, "parties have expressly contracted with respect to the duty to indemnify, the extent of the duty must be determined from the language of the contract." *Grand Trunk W. R.R. v. Auto Warehousing Co.*, 262 Mich. App. 345, 353, 686 N.W.2d 756 (2004). If language included in a contract is "clear and unambiguous, it is to be construed according to its plain sense and meaning." *Grosse Pointe Park v. Michigan Muni. Liability & Prop. Pool*, 473 Mich. 188, 198, 702 N.W.2d 106 (2005).

In this case, the Tesla batteries were damaged when the SVB truck was in an accident, and RPM reimbursed Tesla in the amount of $765,016.80 for the loss. This loss is covered by the unambiguous language of the Agreement. The damage arose out of the "use or operation . . . of any motor vehicle . . . in performance of services under [the] Agreement," and therefore, SVB must indemnify RPM for those losses pursuant to paragraphs 16 and 17 of the Agreement. There is no genuine issue of material fact that SVB breached the indemnification provision of the Agreement and that RPM suffered damages in the amount of $765,016.80.

SVB argues that the contract only required it to obtain a minimum of $100,000 in insurance coverage for cargo, and that RPM did not inform it that the Tesla cargo was worth over $700,000. Paragraph 15 of the

8

agreement provides that SVB shall obtain "cargo liability insurance with minimum limits of not less than One Hundred Thousand Dollars ($100,000) per shipment, and if requested by Broker, commercial general liability insurance of One Million Dollars ($1,000,000) per occurrence." ECF No. 20-2 at PageID.135. SVB suggests that RPM was required to inform it in advance of the value of the cargo, so that it could modify its insurance coverage as necessary. SVB does not point to such a provision in the contract. Moreover, the agreement states that "Carrier's indemnification obligations described in this Agreement, including Section 17 below, will not be reduced or limited by the actual insurance policy limits that Carrier chooses to purchase." *Id.* In other words, the amount of insurance coverage purchased by SVB is not relevant to the amount it "shall pay" for "any losses" under the indemnification provision. *Id.* at ¶¶ 16, 17. RPM is entitled to summary judgment in its favor on its breach of contract claim.

     RPM has not sought summary judgment on its declaratory judgment or unjust enrichment claims, which it acknowledges are pleaded in the alternative to its breach of contract claim. In light of the court's ruling that RPM is entitled to judgment on its breach of contract claim, it is unnecessary for the court to address or for RPM to pursue the remaining

9

claims. The court will dismiss RPM's declaratory judgment and unjust enrichment claims as moot.

### III.  Conclusion

It is **ORDERED** that RPM's motion for summary judgment (ECF No. 20) on its breach of contract claim is **GRANTED** and RPM's declaratory judgment and unjust enrichment claims are **DISMISSED AS MOOT.**

It is further **ORDERED** that Defendant's motion to file supplemental brief (ECF No. 23) is **GRANTED** and Plaintiff's motion to strike (ECF No. 24) is **DENIED.**

The court is prepared to enter judgment in favor of Plaintiff, subject to any additional facts or legal authority on damages Plaintiff intends to present. Plaintiff has the option of submitting a brief further addressing damages, and/or a proposed judgment, by **August 15, 2025.** Defendant may submit a response by **August 29, 2025.** If Plaintiff does not timely submit a supplemental brief or proposed judgment, the court will enter judgment for Plaintiff, based upon the record currently before it, in the amount of $765,016.80.

**SO ORDERED.**

Dated: July 25, 2025                                    s/F. Kay Behm
                                                        F. Kay Behm
                                                        United States District Judge